# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERTO RODRIGUEZ, JR., individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 15 C 10641 ) |
| SPRINT/UNITED MGMT. CO., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Roberto Rodriguez, Jr., has sued Sprint/United Management Company on behalf of himself and a class of similarly situated individuals, alleging that Sprint violated the Fair Credit Reporting Act's disclosure requirement, 15 U.S.C. § 1681b(b)(2)(A). Sprint has moved to dismiss Rodriguez's FCRA claim for lack of subject matter jurisdiction. For the reasons stated below, the Court denies Sprint's motion.

### Background

The Court takes the following facts from Rodriguez's complaint, accepting them as true for purposes of the present motion. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). Rodriguez applied for a job at a Sprint retail store in Chicago in June 2015. As part of the application process, Sprint provided Rodriguez with a form seeking his authorization for Sprint to procure a background check. This form, titled "Authorization for Background Investigation," contained "third party authorizations, a

blanket release of multiple types of information from multiple types of entities, state specific information, and various statements above and beyond a disclosure that a consumer report would be procured." Pl.'s Resp., dkt. no. 28, at 4. Rodriguez signed the form, whereupon Sprint procured a consumer report on Rodriguez from a consumer reporting agency.

Rodriguez filed suit in the Circuit Court of Cook County in November 2015, alleging that Sprint's authorization form did not comply with the requirements set forth in the FCRA. Section 1681b(b)(2)(A) of the FCRA provides that a "person may not procure a consumer report" unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A). Rodriguez alleged that because the authorization form did not "consist[] solely of the disclosure" and the consumer's authorization (which the statue expressly permits to "to be made on the [disclosure] document"), Sprint willfully violated the FCRA. He sought statutory damages, punitive damages, and costs and attorneys' fees associated with pursuing his suit.

Sprint removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. It then made an offer of judgment to Rodriguez in which it proposed paying $1,000 to settle his claim. After Rodriguez allowed the offer to lapse, Sprint moved to dismiss for lack of subject matter jurisdiction due to the purported absence of a justiciable case or controversy. It contended first that because Rodriguez did not allege

2

any actual damages, he had not suffered an injury sufficient to give rise to standing to sue. Second, Sprint argued that a justiciable controversy no longer existed due to its offer of judgment, which it characterized as giving Rodriguez the full extent of monetary damages he sought to collect through this action. Sprint sought dismissal or, in the alternative, a stay of proceedings until the Supreme Court issued decisions in pending cases relevant to each issue.

In an oral ruling, the Court denied Sprint's motion to stay. *See* dkt. no. 27. In the weeks that followed, one of those cases was decided: in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670 (2016), the Supreme Court determined that a lapsed offer of judgment has no effect on the justiciability of a case and does not nullify a live controversy between the litigating parties. Sprint acknowledges that *Campbell-Ewald* defeats its argument regarding its offer of judgment, and it no longer seeks dismissal on this ground. It does, however, still contend that Rodriguez's FCRA claim should be dismissed for lack of subject matter jurisdiction on the ground that he lacks standing to sue.

**Discussion**

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A defendant mounts a factual challenge when it contends that a plaintiff's pleadings are formally sufficient but subject matter jurisdiction is lacking in fact. *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). A facial challenge, on the other hand, contends that the pleadings are insufficient to establish subject matter jurisdiction. *Id.* at 443. Where, as here, a

3

defendant mounts a facial challenge to subject matter jurisdiction, "courts apply the same analysis used to review whether a complaint adequately states a claim: 'courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Silha*, 807 F.3d at 173 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

"Article III of the Constitution limits federal judicial power to certain 'cases' and 'controversies,' and the 'irreducible constitutional minimum' of standing contains three elements." *Silha*, 807 F.3d at 172–73 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)). The first of these three elements is that the plaintiff must have suffered an "'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The injury must also be "fairly traceable to the challenged action of the defendant" and redressable through judicial action. *Id.*

Although Sprint does not contest whether Rodriguez satisfies the causation and redressability elements of Article III standing, it contends that Rodriguez has failed to allege that he suffered an injury in fact. Sprint argues that because Rodriguez has not alleged any actual harm and does not seek actual damages, he has failed to claim a concrete injury capable of judicial redress. Rodriguez counters that the Seventh Circuit has recognized that "the Fair Credit Reporting Act provide[s] for modest damages without proof of injury," *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), and that in any event, actual injury can exist even where a plaintiff does not seek to recover actual damages.

Although the Constitution limits Congress's power to confer standing, the

4

Supreme Court has recognized that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan*, 504 U.S. at 578. One way Congress may do this is by creating statutory rights. The Seventh Circuit and other circuit courts throughout the country have repeatedly recognized that Congress may create statutory rights the violation of which gives rise to an injury sufficient to support Article III standing. *See, e.g.*, *Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 663–64 (7th Cir. 2015); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009). The Supreme Court held exactly that, over forty years ago:

> The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing. . . . Essentially, the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Warth*, 422 U.S. at 500 (citations and internal quotation marks omitted). The relevant question, then, is "whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

To determine whether a statute creates an enforceable right, a court must consider three factors:

> (1) whether Congress intended the provision to benefit the plaintiff, as evidenced by rights-creating language; (2) whether the right is not so vague and amorphous that its enforcement would strain judicial competence; and (3) whether the statute unambiguously imposes a binding obligation on the [defendant], such that the provision is couched in mandatory, rather than precatory, terms.

*Johnson*, 783 F.3d at 664 (quoting *Bontrager v. Ind. Family & Soc. Servs. Admin.*, 697 F.3d 604, 607 (7th Cir. 2012) (internal citations and quotation marks omitted)). The

5

Court therefore turns its attention to the statutory text. Section 1681b(b)(2)(A) of the FCRA requires that a person seeking to procure a consumer report for employment purposes must first provide in writing a "clear and conspicuous disclosure" to the consumer and receive the consumer's authorization. 15 U.S.C. § 1681b(b)(2)(A). Although the document containing the disclosure may also include a space for the consumer to give his written authorization, it must otherwise "consist[] solely of the disclosure." *Id.* And pursuant to section 1681n(a) of the FCRA, "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to . . . damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a).

Applying the factors enumerated in *Johnson* and *Bontrager* to the present case, it is readily apparent that Rodriguez has alleged an injury in fact sufficient to confer standing to sue under Article III. The FCRA exists to protect the privacy and economic interests of consumers. *See* 15 U.S.C. §§ 1681(a)(2)–(4). The purpose of the law is to protect consumers by requiring consumer reporting agencies to meet the needs of commerce "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." *Id.* § 1681(b). One way that Congress attempted to achieve this purpose was through the disclosure provision in section 1681b(b)(2)(A), which provides that a consumer's private information may be disclosed only after the consumer has signed a clear and decipherable authorization. Section 1681b(b)(2)(A) exists to ensure that consumers who authorize disclosure do so freely and knowingly, and together with the private enforcement provision in section 1681n(a), it imposes a binding, mandatory obligation

6

on a party in Sprint's position.

Applying similar tests, multiple circuit courts of appeals have come to the same conclusion. In *Robins v. Spokeo, Inc.*, a consumer sued a company alleging that it had posted false personal consumer information about him on its website in violation of the FCRA. *Robins v. Spokeo, Inc.*, 742 F.3d 409, 410 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015). The consumer did not seek actual damages, but, as the Ninth Circuit recognized, section 1681n(a) does not require a consumer to do so. The court observed that by providing this enforcement provision, Congress created individual statutory rights under the FCRA. *Robins*, 742 F.3d at 413. The court then held that when "the statutory cause of action does not require proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages." *Id.* In *Beaudry*, the Sixth Circuit addressed the same question. Because the consumer plaintiff was "'among the injured,' in the sense that she allege[d] the defendants violated *her* statutory rights," and the statute protected against "individual, rather than collective, harm," the court held that a plaintiff suing under section 1681n sufficiently alleged an injury in fact by alleging a violation of the FCRA. *Beaudry*, 579 F.3d at 707. The Eighth Circuit has likewise so held. *See Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498–99 (8th Cir. 2014).

Sprint argues that this case is distinguishable from *Robins*, *Beaudry*, and *Hammer* because although the plaintiffs in those cases sued pursuant to section 1681n(a), the unlawful activity alleged did not violate section 1681b(b)(2)(A). This is true but inconsequential. Congress enacted the FCRA to protect consumer control over personal information the exposure of which, though often necessary in the modern

7

economy, can result in a significant invasion of privacy and can jeopardize a consumer's personal, reputational, and financial well-being. The statute provides that when a person or entity willfully violates a mandate of the FCRA that is designed to protect these interests, the aggrieved consumer may recover statutory damages.

Finally, Sprint argues that the Court should refuse to find that Rodriguez has standing because the Supreme Court's grant of certiorari in *Robins* calls the reasoning in those cases into question and because finding standing would be inconsistent with decisions issuing from the Second, Third, and Fourth Circuits. *See David v. Alphin*, 704 F.3d 327 (4th Cir. 2013); *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112 (2d Cir. 2009); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146 (3d Cir. 1999). Neither of these arguments has merit. First, the fact that at least four Justices of the Supreme Court voted to grant certiorari in *Robins* says nothing about whether at least five Justices will be convinced to reverse the court below.

Second, finding standing in this case is not inconsistent with *David*, *Kendall*, or *Doe*. In *David*, participants in two retirement plans sued the sponsor and individual fiduciaries of the plans alleging that the defendants breached their fiduciary duties and engaged in prohibited transactions in violation of ERISA. Although ERISA provides that plan participants may bring suit against fiduciaries for breaches of their duty of loyalty, another provision bars plan participants from recovering personal damages and permits them to seek recovery only on behalf of the plan. *David*, 704 F.3d at 332. The Fourth Circuit found that a participant in a retirement plan who brought suit under ERISA possessed statutory standing to sue but lacked constitutional standing. *Id.* at 334. There, however, ERISA codified statutory rights for pension plans, not for every one of

their participants; no "concrete, particularized" injury was present where each time a fiduciary breached its duty to a plan, thousands of plan participants would be able to claim a right to sue on its behalf. The Second Circuit in *Kendall* addressed a similar issue and came to the same conclusion. *Kendall*, 561 F.3d at 118–19. And in *Doe*, the Third Circuit noted that if a plaintiff suing under the Americans with Disabilities Act had not sufficiently alleged a personal injury, he would have lacked constitutional standing because Congress's mere declaration that a practice is henceforth unlawful is not sufficient to create constitutional standing. *Doe*, 199 F.3d at 153.

The present case is very different from each of the cases upon which Sprint relies. In enacting the FCRA, Congress identified individual interests that the increased use of credit reporting agencies stood to jeopardize, namely, interests in privacy and economic self-determination. When Congress created individual, enforceable statutory rights in the FCRA, it "elevat[ed] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Lujan*, 504 U.S. at 578. The concerns animating the courts' decision-making in *David*, *Kendall*, and *Doe* are not present in this case, and their holdings do not govern this case.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion to dismiss [dkt. no. 6]. Defendant is directed to answer the complaint by no later than March 3, 2016. Rule 26(a)(1) disclosures are to be made by March 10, 2016. The case is set for a status hearing on March 23, 2016 at 9:00 a.m. for the purpose of setting a discovery and pretrial schedule. Counsel are directed to confer prior to that date to attempt to

agree on a schedule to propose to the Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 19, 2016